HUNTER, JR. Robert N., Judge.
George Clinton Ruffin ("Defendant") appeals following jury verdicts finding him guilty of one count of felony obtaining property by false pretenses and two counts of misdemeanor possession of stolen goods. On appeal, Defendant argues: (1) his trial counsel rendered ineffective assistance of counsel by failing to move to dismiss the charges after Defendant presented evidence; and (2) the trial court abused its discretion by denying his request to call a character witness. We find no prejudicial error.
I. Factual and Procedural Background
On 26 September 2016, an Alamance County Grand Jury indicted Defendant for felony obtaining property by false pretenses, felony possession of stolen goods, misdemeanor possession of stolen goods, and with being a habitual felon.
The court called the case for trial on 7 November 2017. The State chose to proceed on felony obtaining property by false pretenses, two counts of misdemeanor possession of stolen goods, and attaining habitual felon status. Prior to the beginning of the State's case, Defendant requested to add Keisha Bluford to his witness list. The State objected on the ground of timeliness, citing N.C. Gen. Stat. § 15A-905(c)(3) (2017), which requires Defendant timely submit a list of witnesses. The trial court denied Defendant's request.
The State's evidence tended to show the following facts. Guy Huffman, a construction worker and foreman-supervisor for Dane Construction, Inc., testified. He and his crew worked on a project at Elon University in January 2016. While on the project, the crew stayed at a Ramada Inn. During their stay at the Inn, Huffman parked the company truck in the Inn's parking lot.
On the evening of 20 January 2016, Huffman, as was his practice, left the passenger door of the truck unlocked so his crew members could place their belongings inside. Early the next morning, Huffman realized tools were missing from the truck, including his concrete saw, drill and saw combo set, and all his hand tools. Huffman reported the theft to the Burlington Police Department later that day. He gave officers the makes, models, and serial numbers of the missing tools.
Daylon Kim, the manager of USA Pawn in Burlington, testified next. On direct-examination, Kim testified as to the following.
Kim detailed the following procedures at USA Pawn. When a customer brings an item to sell or pawn, an employee examines the item and determines if they need it for the store. In order to complete the sale or pawn, the customer must present proper identification and sign a paper record. The paper record includes a space at the bottom for the "Pledger/Seller's Signature." Above the signature line, the paper record states, "The pledger of the items attests that it is not stolen, has no liens or encumbrances, and is the pledger's to sell or pawn." USA Pawn pays customers in cash for purchased items.
On 23 January 2016, Defendant carried an assortment of tools into USA Pawn and placed them on the counter for Kim to assess. Kim identified Defendant as the man who sold him the tools. Kim sorted through the tools and told Defendant which ones USA Pawn would purchase. During the processing of the tools, Kim talked only to Defendant. "I believe I was talking to [Defendant] only about the price; about the items that we do take, we don't take. I was talking to other people as well, but, about the price-wise, I was just talking to [Defendant] only."
Defendant showed Kim his photo ID as required, and another employee prepared the paper record for Defendant to sign. After Defendant signed the paper record, Kim paid Defendant $80 in cash. At the conclusion of the sale, one of the other men helped Defendant carry the unpurchased tools out of the store.
On cross-examination, Kim clarified all three men carried the assortment of tools into the store-not just Defendant. When asked who he talked to during the sale, Kim explained he told the other men with Defendant which tools the store would purchase. USA Pawn purchased the Husqvarna concrete saw, Milwaukee drill and saw combo set, and Delco floor jack complete with a drop cord and tie down.[1] During the sale, the two men with Defendant asked Kim why he did not accept the remaining tools.[2]
Marlene Arcos, the Burlington Police Department employee who took Huffman's report over the phone on 21 January 2016, testified as follows. Arcos entered the serial numbers of the stolen tools into the National Crime Information Center database. She estimated the total value of the tools at $1,950.
Jeremy Seppey, a detective with the Burlington Police Department, testified. Officer Seppey began investigating the case on 25 January 2016. He searched the Leads Online database for the missing tools, and located the concrete saw, drill and saw combo set, and several other tools sold at USA Pawn on 23 January 2016. On 26 January 2016, Officer Seppey visited USA Pawn and matched the serial numbers of the missing tools to the serial numbers on the concrete saw and drill and saw combo set. Officer Seppey picked up the tools from USA Pawn on 2 February 2016 and returned them to Huffman on the same day. While at the store, Officer Seppey got a copy of the paper record of Defendant's transaction, and briefly spoke with Kim. Kim told Officer Seppey the only statement Defendant made during the transaction was that he wanted to get rid of the tools.
The State rested. Defendant moved to dismiss the charges. The trial court denied his motion.
Defendant testified on his own behalf. In summer 2015, Defendant became involved with Greensboro's Step Up program, a non-profit organization that "caters to the need[s]" of others. Defendant completed social and educational training in order to become a recruiter for Step Up. On 23 January 2016, Defendant went to Alamance County to look for recruits for Step Up. In the process of looking for recruits, Defendant saw Maurice Chavis and a man Defendant did not know. Defendant and Chavis were not personal friends, but the two played basketball together "back in the day."
Defendant told Chavis and the other man about the Step Up program in Greensboro. Chavis showed interest but told Defendant he could not drive to Greensboro because his car was not operational. Defendant asked what he could do to help Chavis. Chavis explained he tried to pawn his tools to pay for car repairs but had trouble because of his invalid ID. Defendant offered to use his ID for Chavis because he knew him and "didn't have no reason to think of any means of distrusting him." Defendant went with Chavis and the other man to Chavis's apartment. Once there, Chavis and the other man brought a bin of tools onto the porch and asked Defendant to go with them to USA Pawn.
At USA Pawn, Chavis removed the tools from the bin and set them on the counter. Kim "wouldn't talk to nobody but [Defendant]"-who presented his ID. While Kim sorted through the tools and made offers, Defendant looked at Chavis and the other man, saying, "what do you want to do?" Defendant asked Chavis and the other man what they wanted to sell because Defendant was "only there for one purpose and that was to use [his] ID and that was it." Defendant told Kim, "You can just give the money to this guy here because the stuff is not mine." Defendant gave the money to Chavis while they were still in the pawn shop. The men dropped Defendant off at his sister's home, and Defendant returned to Greensboro the following Monday or Tuesday. Chavis never came to the Step Up program in Greensboro.
The jury found Defendant guilty of one count of felony obtaining property by false pretenses and both counts of misdemeanor possession of stolen goods. Defendant pled guilty to attaining habitual felon status. The court sentenced Defendant to 67 to 93 months imprisonment. Defendant timely gave oral notice of appeal.
II. Jurisdiction
Defendant's appeal from the final judgment of the Alamance County Superior Court lies as of right to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2017).
III. Standard of Review
"[T]his Court reviews whether a defendant was denied effective assistance of counsel de novo." State v. Wilson , 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014). "Under de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." State v. Ward , 226 N.C. App. 386, 388, 742 S.E.2d 550, 552 (2013) (citation omitted).
We review the trial court's decision to deny Defendant's request to allow an undisclosed witness to testify at trial for abuse of discretion. State v. Miller , 142 N.C. App. 435, 444, 543 S.E.2d 201, 207 (2001). An abuse of discretion occurs "where the [trial] court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis , 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1998).
IV. Analysis
A. Ineffective Assistance of Counsel
Defendant argues he received ineffective assistance of counsel when his trial counsel failed to move to dismiss the charges of felony obtaining property by false pretenses and both counts of misdemeanor possession of stolen goods at the close of all evidence.[3]
"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense[.]" State v. Moses , 205 N.C. App. 629, 636, 698 S.E.2d 688, 694 (2010). To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Tanner , 193 N.C. App. 150, 154, 666 S.E.2d 845, 849 (2008), rev'd on other grounds , 364 N.C. 229, 695 S.E.2d 97 (2010) (citation omitted). "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." State v. Braswell , 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington , 466 U.S. 668, 694, 80 L.Ed. 2d. 674, 698 (1984). To determine prejudice, we analyze whether the motion to dismiss would have been granted.[4]
Defendant contends he suffered prejudice because the State presented insufficient evidence to support the charges, and the trial court would have granted his renewed motion to dismiss if properly made. Specifically, Defendant asserts the State did not make a substantial showing: (1) Defendant knew or had reasonable grounds to believe the tools he sold were stolen; (2) Defendant acted with a dishonest purpose; and (3) Defendant made a false representation calculated and intended to deceive. We disagree.
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Powell , 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). "[T]he defendant's evidence, unless favorable to the State, is not to be taken into consideration, except, when not in conflict with the State's evidence, it may be used to explain or make clear that which has been offered by the State." State v. Nall , 239 N.C. 60, 64, 79 S.E.2d 345, 357 (1953). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." State v. Fritsch , 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (citation and quotation marks omitted). "[S]o long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also 'permits a reasonable inference of the defendant's innocence.' " State v. Miller , 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (quoting State v. Butler , 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002) ).
i. Knowledge or Reasonable Grounds to Believe
Defendant argues the State failed to present substantial evidence he knew or had reasonable grounds to believe the tools were stolen.
"The elements of possession of stolen goods are: (1) possession of personal property; (2) which has been stolen; (3) the possessor [knows] or [has] reasonable grounds to believe the property to have been stolen; and (4) the possessor [acts] with a dishonest purpose." State v. Tanner , 364 N.C. 229, 232, 695 S.E.2d 97, 100 (2010) (citation and quotation marks omitted). See N.C. Gen. Stat. § 14-71.1 (2017). "Whether the defendant knew or had reasonable grounds to believe that the [property was] stolen must necessarily be proved through inferences drawn from the evidence." State v. Brown , 85 N.C. App. 583, 589, 355 S.E.2d 225, 229 (1987) (citations omitted).
At trial, the State offered evidence showing: (1) Defendant entered the store with other men; (2) the other men helped Defendant carry the tools into the store; (3) Defendant sold the tools; (4) Defendant presented his ID for the sale; (5) Defendant signed the "Pledger/Seller" line attesting the tools were not stolen and were his to sell; (6) the other men with Defendant showed interest regarding which tools the store purchased; and (7) the other men helped Defendant carry the unpurchased tools out of the store. Additionally, Defendant's testimony showed the following: (1) Defendant and Chavis were not friends; (2) Chavis told Defendant he had money troubles; (3) Chavis acknowledged to Defendant he could not pawn the tools himself; and (4) Chavis was willing to sell the tools for a substantially low amount. See State v. Haywood , 297 N.C. 686, 690, 256 S.E.2d 715, 719 (1979) (recognizing knowledge or reasonable grounds to believe property is stolen can be implied from a seller's willingness to sell the good for a "mere fraction" of its value). See also Nall , 239 N.C. at 64, 79 S.E.2d at 357 (stating when determining substantial evidence, the court may consider a defendant's evidence when it is not in conflict with the State's evidence). We conclude the evidence, when viewed in the light most favorable to the State, supports a "reasonable inference" Defendant knew or had reasonable grounds to believe the tools were stolen. Miller , 363 N.C. at 99, 678 S.E.2d at 594.
ii. Dishonest Purpose
Defendant argues the State failed to present substantial evidence he acted with a dishonest purpose.
The element of a defendant's dishonest purpose "can be met by showing that the possessor acted with an intent to aid the thief, receiver, or possessor of stolen property. The fact that the defendant does not intend to profit personally by his action is immaterial." State v. Parker , 316 N.C. 295, 305, 341 S.E.2d 555, 561 (1986). The State can prove dishonest purpose by direct or circumstantial evidence. State v. Withers , 111 N.C. App. 340, 348, 432 S.E.2d 692, 698 (citing State v. Bell , 285 N.C. 746, 208 S.E.2d 506 (1974) ).
The State's evidence recanted above supports a "reasonable inference" Defendant intended to aid Chavis, the possessor of stolen goods. Miller , 363 N.C. at 99, 678 S.E.2d at 594. Additionally, Defendant testified, "I would do all I [could] to help him even if it meant for me to--present my ID for him." He "was only there for one purpose and that was to use [his] ID and that was it." It is immaterial Defendant did not intend to profit personally; it is enough Defendant intended to help Chavis, a possessor of stolen goods. Parker , 316 N.C. at 305, 341 S.E.2d at 561. Viewed in the light most favorable to the State, we conclude the State presented substantial evidence to support a reasonable inference Defendant acted with a dishonest purpose.
iii. False Representation Intended to Deceive
Defendant argues the State failed to present substantial evidence he made a false representation intended to deceive.
The elements of obtaining property by false pretenses are: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." State v. Cronin , 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980). False statements are:
false representations as to existent facts, false within the knowledge of the party making them, or made recklessly without belief or any fair and just reason to believe in their truth, calculated and intended to deceive, and which do deceive, the person from whom the money or thing of value is taken, and reasonably relied on by such person at the time of taking.
State v. McFarland , 180 N.C. 726, 729, 105 S.E. 179, 180 (1920). "The false representation may consist of an action or conduct rather than necessarily being made by spoken words." State v. Pendergraft , 238 N.C. App. 516, 523, 767 S.E.2d 674, 679 (2014) (citation omitted).
At trial, the State introduced substantial evidence showing Defendant made a false representation intended to deceive USA Pawn when he signed the "Pledger/Seller's Signature" line. The evidence shows USA Pawn relied on Defendant's signed attestation because the store policy required his signature to purchase the tools in exchange for cash. This evidence is sufficient for the jury to make a "reasonable inference" Defendant intended the false representation to induce the sale. Miller , 363 N.C. at 99, 678 S.E.2d at 594.
Upon a review of the totality of the evidence and viewing the evidence in the light most favorable to the State, we conclude the State presented substantial evidence Defendant obtained property by false pretenses and possessed stolen goods. Because we conclude the State presented substantial evidence, we further conclude Defendant failed to show a "reasonable probability" the trial court would have granted a renewed motion to dismiss at the close of all evidence. Strickland , 466 U.S. at 694, 80 L.Ed. 2d. at 698. Therefore, since Defendant's trial counsel's failure to renew the motion to dismiss did not prejudice Defendant, he did not suffer from ineffective assistance of counsel.[5]
B. Denial of Request to Call Witness
Defendant next contends the trial court abused its discretion by denying his request to call Keisha Bluford as a character witness. We disagree.
Under N.C. Gen. Stat. § 15A-905(c)(3), "in the interest of justice, the court may in its discretion permit any undisclosed witnesses to testify." N.C. Gen. Stat. § 15A-905(c)(3).
On the morning of the trial, Defendant informed the court of his intent to add Bluford to his witness list. The State objected, arguing Bluford's name did not appear on the witness list given to the State before the beginning of jury selection, as required by N.C. Gen. Stat. § 15A-905(c)(3). Defendant did not respond to the State's statutory argument. The court denied Defendant's request.
We need not decide whether the trial court abused its discretion, as Defendant failed to meet his burden of proving prejudicial error. N.C. Gen. Stat. § 15A-1443(a) (2017). Upon a review of the record, we conclude even had the trial court allowed Bluford to testify, there is not "a reasonable possibility that ... a different result would have been reached at the trial[.]" Id. Accordingly, Defendant's argument is without merit.
V. Conclusion
For the foregoing reasons, we find no prejudicial error.
NO PREJUDICIAL ERROR.
Report per Rule 30(e).
Chief Judge McGEE and Judge HAMPSON concur.

Only the Husqvarna concrete saw and Milwaukee drill and saw combo set showed as stolen in the National Crime Information Center database.

Kim's cross-examination did not make clear his response to the men's questioning.

Ineffective assistance of counsel claims can be resolved on direct appeal "when the cold record reveals that no further investigation is required, i.e. claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Fair , 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001). We conclude Defendant's claim does not require any further investigation and can be addressed on direct appeal.

A defendant who fails to move to dismiss at the end of all evidence may not challenge the sufficiency of the evidence on appeal. N.C. R. App. P. 10(a)(3) (2017). Although denial of Defendant's motion to dismiss was not preserved for review on direct appeal, we address it as part of his ineffective assistance of counsel claim.

Defendant requests the Court invoke Rule 2 of the Rules of Appellate Procedure because his trial counsel's failure to renew the motion to dismiss waived his right to a review on direct appeal of the sufficiency of the evidence. Because in our review of Defendant's ineffective assistance of counsel claim we conclude the State presented substantial evidence of the crimes, we deny Defendant's request to invoke Rule 2 and vacate his charges.